HENNING (UNITED STATES v.). See Cases Nos. 15,348 and 15,349.

## Case No. 6,367.

In re HENNOCKSBURGH et al.

[6 Ben. 150;[1] 7 N. B. R. 37.]

District Court, N. D. New York. June 24, 1872.

BANKRUPTCY—TIME WHEN DEBT IS PROVABLE.

1. A debt, existing at the time of the adjudication in bankruptcy, but not existing at the time of the commencement of the bankruptcy proceedings, is provable in bankruptcy. The case of In re Crawford [Case No. 3,363], dissented from.

[Cited in Re Lachemeyer, Case No. 7,966; In re Boston & Fairhaven Iron Works, 23 Fed. 881, 29 Fed. 784.]

2. A suit for assault and battery, having been commenced against the bankrupts prior to the commencement of the proceedings in bankruptcy, was continued to judgment before the adjudication, no leave of the bankruptcy court having been obtained: Held, that, as the claim was not provable until the judgment was obtained, it was not necessary to obtain such leave.

[Cited in Re Broich, Case No. 1,921.]
[Cited in Howland v. Carson, 28 Ohio St. 628.]
[See In re Bailey, Case No. 729.]

[In bankruptcy. In the matter of William Hennocksburgh and Marx Block.]

HALL, District Judge. The assignee in this case having applied for an order expunging the proof of debt made therein by Mary C. Bainbridge, and she having appeared by attorney to oppose such application, it was stipulated that the matters in controversy should be submitted and decided upon the papers and written briefs left with the clerk, without other argument. The alleged indebtedness is a judgment rendered in the supreme court of this state upon a verdict taken against the bankrupts on the 20th September, 1870, in an action brought by the said Mary C. Bainbridge, against the bankrupts, for an assault and battery and false imprisonment. The suit in which the verdict was rendered was commenced in May, 1869; and the final judgment therein was perfected and docketed in Onondaga county, in which the bankrupts resided, October 6, 1870. The judgment was confessedly in tort, for a personal injury to the plaintiff; and it is clear that her claim was not a provable debt until the judgment was entered.

The petition in bankruptcy was filed against the bankrupts July 28, 1870; but it appears from the papers on file that no adjudication was made under the order to show cause granted on that day and made returnable on the 16th of August, 1870; and that on the 28th of September, 1870, an alias order to show cause was granted, upon the same petition, and was made returnable on the 25th of October of that year. On the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

last named day an order of adjudication was granted;—no one appearing to oppose.

The assignee insists that the debt proved was not provable, because there was no debt until the judgment was entered; and he insists, that the judgment was not entered until after the adjudication. As the date of the adjudication does not appear upon the papers submitted, it may be that he had overlooked the fact that the judgment was docketed nearly three weeks before the actual adjudication; or it may be that, under the decision to that effect hereinafter cited, he has regarded the time of the filing of the petition as the time of the adjudication, for the purposes of the present question.

The assignee also insists that even if the claimant had a valid debt at the time of the adjudication, it cannot be proved in these proceedings, because the suit was continued and a verdict and judgment taken, after the petition in bankruptcy was filed, without the leave of the bankruptcy court.

No doubt would have been entertained upon the question presented, if the judgment had been in fact entered after the actual adjudication in bankruptcy made on the 25th of October, 1870. Until the judgment, the plaintiff had no provable debt; for her claim, as before stated, was simply and purely a claim for damages for a personal injury, and such damages are not provable unless liquidated and transmuted into a legal debt by a judgment obtained before the filing of the petition in bankruptcy or before the adjudication, as the one or the other of these is to be considered as fixing the time when a debt must exist to be provable in bankruptcy.

In this case the actual adjudication was granted after judgment perfected, and if a debt, existing at the time of the actual adjudication, but which did not exist at the time of the filing of the first petition in bankruptcy, is not provable, the proof of debt must be expunged.

There is some want of clear and certain and consistent expression in the bankruptcy act [of 1867 (14 Stat. 517)] in respect to this question. The first clause of the 19th section of the act, if it stood alone, would seem to be decisive of the question; and it is entitled to much weight, as being the first and a most important general provision of the act in reference to the character and description of the debts which may be proved. By this clause it is provided "that all debts due and payable from the bankrupt at the time of the adjudication of bankruptcy, and all debts then existing, but not payable until a future day, a rebate of interest being made when no interest is payable by the terms of the contract, may be proved against the estate of the bankrupt." In the third clause of the same section it is provided, that "if the bankrupt shall be bound as drawer, indorser," &c., &c., * * * "and his liability shall not have become absolute until after the adjudication of bankruptcy, the creditor may prove the same after such liability shall have become fixed," &c. In another portion of the same section, provision is made for proving a claim for rent, &c., falling due at fixed and stated periods; and it is provided that "the creditor may prove for a proportionate part thereof up to the time of the bankruptcy."

By the terms of the 11th section it is provided, that the filing of a voluntary petition is an act of bankruptcy; and that the petitioner shall be adjudged a bankrupt;—which adjudication, under the 4th section of the act, may be made, if there is no opposing interest, by the register to whom the case is referred. In involuntary cases of bankruptcy, the adjudication cannot be made in less than five days from the filing of the petition, unless the debtor appears and consents, and it may not take place (as in this case) until months after the petition is filed, whether the case be one of voluntary or involuntary bankruptcy. I think the fair construction of the act is, that a petitioner or debtor is not to be deemed a bankrupt, within the contemplation of the provision for the proof for rent, &c., just alluded to, until the order of adjudication is made; and that the time of the actual adjudication of bankruptcy is the time referred to in this provision, in regard to the proof of rent, &c., unless, indeed, the other portions of the bankruptcy act require the court to say, that the time of the filing of the petition in bankruptcy, and not the time of the adjudication of bankruptcy, is the time intended, where the "adjudication of bankruptcy" is mentioned in section 19.

I confess that my own impressions are against such construction. The filing of the first petition (being a petition for an adjudication in bankruptcy, whether the case is one of voluntary or involuntary bankruptcy), is many times referred to in the act; and, by section 38, it is declared to be, not an adjudication, but the commencement of proceedings under the act. The time of filing of the petition, and the time of adjudication, are several times referred to, in other sections of the act, in such manner as to show that congress was, or should have been, fully aware that the adjudication of bankruptcy was, in all cases, to be made subsequent to the filing of the petition, and that, in many cases, it would necessarily be made several days, if not weeks or months, after the filing of the petition, as in most cases of involuntary bankruptcy. The registers are authorized to make adjudication of bankruptcy in voluntary cases; but the petition is to be filed with the clerk, and afterwards referred to the register for his action. The filing of the petition, and the adjudication of bankruptcy, are clearly and frequently recognized by the general bankruptcy act, as different in point of time. Section 14 makes the assignment relate back to the commence-

ment of the proceedings in bankruptcy (by the filing of a petition, see section 38); and the "time of the filing of the petition" is referred to in section 20. "The time of adjudication" is referred to, in section 21, as the important time to be regarded, in respect to the proof of certain debts or liabilities of the bankrupt; and, in section 27, it is provided that the wages due to operatives, clerks, or house servants, for which preference is given by the act, must be for labor performed "within six months next preceding the adjudication of bankruptcy," not the commencement of proceedings, unless the one means the other.

By the same section, the second meeting of creditors is to be called "at the expiration of three months from the date of the adjudication," &c.; and, by section 29, the application for a discharge, in certain cases, is to be made "at any time after the expiration of six months from the adjudication of bankruptcy," and "within one year from the adjudication of bankruptcy." In the same section it is provided that certain acts, if "done within four months before the commencement of such (bankrupt) proceedings," shall bar his discharge; and, in section 32, the form of a discharge is given, in which "the day the petition was filed by (or against) him," (the bankrupt) is referred to. In section 35, the time of "the filing of the petition by or against him" (the bankrupt) is twice referred to. The 39th section refers to "the order of adjudication," and shows that the order in involuntary cases cannot be made, except by consent, until at least five days after the service of the petition. Section 44 uses the terms, "after the commencement of proceedings in bankruptcy," and "before the commencement of proceedings in bankruptcy."

When we consider the fact, that the filing of the petition by which the proceedings in bankruptcy were commenced, and the adjudication under it, are entirely different acts, to be performed by different persons, and at different times, and, in some cases, at times widely different from each other, it is difficult to conclude that congress intended "the time of filing the petition," or the time of "the commencement of proceedings in bankruptcy," in the cases where they have omitted the use of either of such or like expressions so often found in the act, and have used instead, and over and over and over again, the expression "the time of the adjudication of bankruptcy." It is only by the exercise of a power of construction which may, perhaps, be properly termed judicial legislation, that it can be held that congress did not mean what they have expressed, in clear and unequivocal terms, but did mean what they did not say; although other parts of the act afford sufficient evidence that they could and did use proper and unequivocal language to express the intention in respect to time, imputed to them by the construction, which gives to the language used a meaning and

effect entirely different from that expressed.

The language used in giving the form of a discharge (section 32) would seem to limit its effect to provable debts which existed on the day the petition was filed, by or against the bankrupt; but section 34, in declaring its effect, provides that, with the exceptions referred to, it shall "release the bankrupt from all debts, claims, liabilities and demands, which were or might have been proven against the estate in bankruptcy." So that the debt of the creditor, in this case, if provable, will be barred by the bankrupt's discharge.

It may be conceded that the bankruptcy act would have been more harmonious, in its language, and its expressed provisions, in relation to the proof of debts, more in accordance with what may properly be deemed the general policy and purpose of the act, if it had expressly provided that only debts existing at the time the petition was filed, by or against the bankrupt, could be proved; and it is not, perhaps, surprising that it has been held by the learned judge of the Eastern district of Michigan, to be the duty of the court to give to the provisions now in question a construction deemed more in accordance with such general policy and purpose, than the construction which would necessarily be given to the language upon which the question mainly depends, if the general purpose and policy of the act was not deemed to require a different construction. In the case referred to,—In re Crawford [Case No. 3,363], —it was held, that it was the intention of the act that such debts, and such only, as existed at the time of the filing of the petition for adjudication of bankruptcy, are provable against the bankrupt's estate. The original claim of the creditor, in that case, would have been provable, if no judgment had been obtained upon it after the filing of the petition in bankruptcy, and although the learned judge held that it was the judgment only which was provable, and that the debt, on which the judgment was rendered, was not provable, because it was merged in the judgment, he yet held, that the costs which might have accrued subsequent to the time of filing the petition, could not be said to constitute a claim or debt existing at that time, and should, therefore, be excluded in making up the amount upon which dividends were to be made in the bankruptcy proceedings.

After much hesitation, I have concluded to act upon my own judgment in the present case, notwithstanding the decision in the Case of Crawford [supra]. The learned judge who decided that case, felt at liberty to express his dissent from opinions delivered by other learned judges; and in the Case of Williams [Case No. 17,705], Judge Shipman appears to have considered that the question, whether a debt was provable depended upon the question, whether it existed at the time of the adjudication of bankruptcy. On the other hand, Judge Blatchford, in the Case of

Patterson [Id. 10,815], expressed an opinion, that debts, to be provable, must have existed at the time of the commencement of the proceedings in bankruptcy. The question did not, however, arise in that case, and in the subsequent case of the New York Mail Steamship Co. [Id. 10,211], I understand that the learned judge decided that the proper charges of the attorneys and counsel of the bankrupt, for their services in resisting the adjudication, were provable in such bankruptcy proceedings, because such services were rendered prior to the adjudication in bankruptcy, although after the petition for adjudication was filed.

There is certainly much reason for supposing that congress deliberately adopted the time of the actual adjudication of bankruptcy, as the time at which a debt must exist in order to be provable, in contradistinction to the time of the commencement of the proceedings in bankruptcy. It was apparent, upon the face of the act, that, in many cases, the adjudication would not be made until a considerable time after the proceedings were commenced, and that, in all, some time must elapse between the filing of the petition and the adjudication. It was also apparent that the act made no provision for giving any notice of the filing of the petition until after the actual adjudication, and that a warrant was then to issue to the marshal requiring him to publish forthwith in the designated newspapers, and to send to the creditors of the bankrupt, the required notices of such proceedings in bankruptcy. This warrant is required to be issued forthwith after the adjudication;—thus evidencing the intention of congress to give the public, especially those who had dealings with the bankrupt, immediate notice of the adjudication in bankruptcy, in order that persons might not longer trust him as worthy of credit, or otherwise deal with him in respect to his property; and the adoption of the language used, under these circumstances, affords strong evidence that congress intended what is repeatedly expressed in the act. It may well have been considered, that no one was likely to trust the bankrupt, with knowledge that proceedings in bankruptcy had been commenced against him, and that it was just and equitable that those who had trusted the bankrupt, in ignorance of the proceedings against him, on the evidence of his solvency, afforded by his possession and apparent ownership of property, should be entitled to prove their debts, and receive dividends from such property, instead of looking solely to a declared bankrupt, just stripped of his property for the benefit of other creditors having no stronger equities. Other reasons of a similar character might be stated, but, as this case is likely to be presented to the circuit, for review, it will be disposed of without further discussion of this question.

The objection that the claimant proceeded in her suit, and that the verdict and judgment were taken after the petition in bankruptcy was filed, without the leave of the bankruptcy court, cannot be maintained. The language of the act is, "that no creditor, whose debt is provable under this act, shall be allowed to prosecute to final judgment any suit, at law or in equity, therefor, against the bankrupt, until the question of the debtor's discharge shall have been determined, and any such suit or proceedings shall be stayed, &c.;" but it does not apply to this case, for the reason that the debt of the claimant was not provable until final judgment was obtained.